## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN J. WILLIAMS,<br><br>        Plaintiff,<br><br>        v.<br><br>FRANCIS J. FOLEY, III,<br><br>MICHAEL E. RILEY, &<br><br>GINA MANCINI-PICKETT,<br>        Defendants. | No. 3:15-cv-1324 (MPS) |

## MEMORANDUM AND ORDER

### I.    Introduction

This case is the latest chapter in the plaintiff Stephen J. Williams's decades-long effort to litigate the suspension of his law license after a dispute over a speeding ticket. The defendants are two Connecticut state court judges, Francis J. Foley, III and Michael E. Riley, as well as a deputy chief clerk, Gina Mancini-Pickett. The plaintiff claims that the defendants violated his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution as well as under the Connecticut Practice Book. The defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The plaintiff has filed a series of motions, including a motion to amend the complaint, a motion to disqualify the Connecticut Attorney General from representing the defendants, a motion for an order that the Clerk of Court determine whether the plaintiff may file electronically, and a motion that the case not be assigned to a particular judge. The Court grants the motion to dismiss and denies the plaintiff's motions. As explained in more detail below, the defendants are entitled to judicial and quasi-judicial immunity, the statute of limitations has run, the proposed amendment to the complaint would be futile, and the plaintiff's remaining motions either lack merit or are moot.

## II.     Legal Standard

A *pro se* attorney, even a suspended *pro se* attorney, is not entitled to the "special solicitude" afforded to *pro se* laypersons. *Parent v. New York*, 485 F. App'x. 500, 502–03 (2d Cir. 2012) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal citations and quotations omitted). Under Rule 12(b)(6), the Court will not accept conclusory allegations and may only allow the case to proceed if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554–55). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## III.     Allegations

The plaintiff alleges the following facts in the First Amended Complaint ("Complaint"). The plaintiff, Stephen J. Williams, is a suspended lawyer who was licensed to practice law in Connecticut, New York, and the District of Columbia. (Complaint, ECF No. 36 at ¶ 8.) Defendant Francis J. Foley, III was an administrative judge of the Connecticut Superior Court and now serves as a judge trial referee. (*Id.* at ¶ 9.) Defendant Michael E. Riley is a Connecticut Superior Court judge and was also an administrative judge. (*Id.* at ¶ 10.) Defendant Gina Mancini-Pickett is an attorney who worked for the Connecticut Superior Court as a deputy chief clerk. (*Id.* at ¶ 11.) All

2

of the defendants served in the Windham Geographical Area of the Connecticut Superior Court. (*Id.* at ¶¶ 9–11.)

### A.      The Plaintiff Receives a Speeding Ticket

On March 30, 2004, law enforcement served the plaintiff with an infraction complaint alleging that the plaintiff was speeding in his car. (*See id.* at ¶ 12.) On April 22, 2004, the plaintiff submitted a written plea of not guilty to the Connecticut Central Infractions Bureau. (*Id.* at ¶ 13.) On August 25, 2004, the plaintiff wrote to the Bureau to inquire about the status of his case and to see whether the Bureau had his correct address. (*Id.* at ¶ 14.) The Bureau did not reply but the letter was forwarded to the court clerk at the courthouse in Danielson, Connecticut. (*Id.* at ¶¶ 15, 19.) All notices regarding hearings in the matter were sent to the wrong address. (*Id.* at ¶ 20.) On November 5, 2004, Ms. Mancini-Pickett "closed out" the case. (*Id.* at ¶ 16.) Then, the Commissioner of Motor Vehicles suspended the plaintiff's driver's license on November 27, 2004 because he did not respond to the infraction complaint. (*Id.* at ¶ 17.) However, most of the notices about the suspended license were sent to a "fictitious" foreign address. (*Id.* at ¶ 21.) On February 23, 2005, the plaintiff learned that his license had been suspended when he was stopped and charged with driving under suspension. (*Id.* at ¶ 18.)

### B.      The Plaintiff Files a "Motion for Mandamus"

Staff at the DMV told the plaintiff that the DMV's "restoration fee would be waived if he were to demonstrate that the notice of suspension had been incorrectly addressed." (*Id.* at ¶ 23.) On March 8, 2005, the plaintiff filed a motion to reopen the speeding case and to have the reopening fee waived, as well as a "motion for mandamus" directing the court clerk to "provide a letter setting out the fact that the Commissioner had been provided with an incorrect postal address by the clerk." (*Id.* at ¶¶ 22–23.)

### C. The Plaintiff Advises the Deputy Chief Clerk to Obtain Counsel and Tells Opposing Counsel Not to Attend Court Proceedings

On March 16, 2005, Judge Riley granted the plaintiff's motion to reopen the case and his motion to waive the reopening fee. (*Id.* at ¶ 24.) Judge Riley scheduled an evidentiary hearing about the clerk's procedures as they related to the "motion for mandamus." (*Id.* at ¶¶ 25–26). On April 7, 2005, the plaintiff served a request for disclosure on the State and the court clerk. (*Id.* at ¶ 27.) That same day, the plaintiff wrote a letter to Ms. Mancini-Pickett to tell her about the topics that would be covered during the hearing and to explain the reason for the "motion for mandamus." (*Id.* at ¶ 28.) He also wrote a letter to the Assistant State's Attorney about the hearing. (*Id.* at ¶ 29.) In the letters, he gave Ms. Mancini-Pickett "unsolicited legal advice," advised her to obtain counsel, suggested that the State's Attorney's Office was acting unethically, and told the Assistant State's Attorney not to appear in court about the matter. (*Id.* at ¶ 40.)

### D. The Plaintiff Is Ordered to Show Cause Why He Should Not Be Disciplined or Suspended

Ms. Mancini-Pickett met with Judge Foley to seek his "intervention in the case." (*Id.* at ¶ 30.) The defendants agreed that Judge Foley would initiate disciplinary charges against the plaintiff "to derail" the mandamus hearing. (*Id.* at ¶ 31.) Accordingly, on April 22, 2005, Judge Foley issued an order to show cause why the plaintiff should not be disciplined or suspended for violating the Connecticut Rules of Professional Conduct by failing to act competently, by engaging in conduct intended to disrupt a tribunal, by failing to respect the rights of third persons, and by engaging in conduct prejudicial to the administration of justice. (*Id.* at ¶ 32.) The order to show cause hearing was scheduled for May 13, 2005 at the same time as the mandamus hearing. (*Id.* at ¶¶ 33, 37.)

On May 12, 2005, the day before the hearing, the plaintiff responded by filing a motion to quash and a motion seeking to postpone the hearing. (*Id.* at ¶¶ 34–37.) Judge Foley denied the

motion for a postponement and Ms. Mancini-Pickett gave a copy of Judge Foley's order to the plaintiff. (*Id.* at ¶ 36.) At the hearing on May 13, 2005, the plaintiff appeared *pro se*. (*Id.* at ¶ 37.) Judge Foley suggested that he get a lawyer. (*Id.*) Throughout the hearing Judge Foley glared at the plaintiff, was terse, and "displayed none of the normal pleasantries expected from a Superior Court judge." (*Id.*) Judge Foley did not decide the plaintiff's motion to quash at the hearing. (*Id.*)

On June 9, 2005, the plaintiff filed a "Motion for Bill of Particulars." (*Id.* at ¶ 39.) A second hearing was held on June 10, 2005, and Judge Foley denied the motion to quash and the motion for mandamus. (*Id.* at ¶ 40.) Then, Judge Foley placed the plaintiff under oath, asked irrelevant questions, and insulted the plaintiff. (*Id.*) Judge Foley adjourned the hearing until July 18, 2005 so that the plaintiff could obtain counsel. (*Id.* at ¶¶ 40, 44.)

### E.  The Plaintiff Attempts to Subpoena Judge Foley, Deputy Chief Clerk Mancini-Pickett, and Opposing Counsel; His Law License Is Suspended

On July 14, 2005, the plaintiff filed an application to the clerk to issue subpoenas for Judge Foley, Ms. Mancini-Pickett, and the Assistant State's Attorney. (*Id.* at ¶ 41.) On July 18, 2005, he filed a motion to suppress the letters that he had sent to Ms. Mancini-Pickett and the Assistant State's Attorney. (*Id.* at ¶ 42.) At the hearing held on July 18, 2005, the plaintiff appeared without a lawyer because he was unable to find an attorney who was willing to represent him. (*Id.* at ¶ 44.) Judge Foley denied the plaintiff's motion to suppress. (*Id.*) Judge Foley would not testify at the hearing or allow Ms. Mancini-Pickett or the Assistant State's Attorney to testify. (*Id.*) That day, Judge Foley suspended the plaintiff's license to practice law. (*Id.* at ¶ 45.) Judge Foley found by clear and convincing evidence that the plaintiff's license should be suspended to protect the public and to safeguard the administration of justice. (*Id.*) Judge Foley noted that the plaintiff's "motion for mandamus" was meritless, that he was not following elementary procedure, and that he had intimidated the court's deputy clerk with unsolicited legal advice. (*Id.*) The plaintiff alleges that

Judge Foley failed to follow applicable law or to address the plaintiff's arguments. (*Id.*) The plaintiff's suspension took effect on August 7, 2005 and notice was published in the Connecticut Law Journal. (*Id.* at ¶ 47.) The plaintiff filed more motions attacking his suspension, which were denied by a different judge. (*Id.* at ¶¶ 49–51.)

### F.      The Plaintiff Is Convicted

In the reopened criminal case arising from the original speeding ticket, Judge Riley eventually convicted the plaintiff of speeding after a bench trial held on October 28, 2005. (*Id.* at ¶¶ 53–54.) The day of the trial, the plaintiff moved to dismiss the charges against him. (*Id.* at ¶ 53.) Judge Riley allegedly improperly denied the motion to dismiss, "supplemented the prosecution," denied the plaintiff his rights, and imposed an illegal sentence. (*Id.* at ¶ 53–55.)

### G.      The Plaintiff Seeks to Obtain the Record for Appeal

On November 17, 2005, the plaintiff appealed his conviction and suspension of his law license. (*Id.* at ¶ 56.) "Ms. Mancini Picket ordered her staff to withhold portions of the docket file and to deny to Plaintiff that those portions existed and that they were being withheld." (*Id.* at ¶ 57.) In May 2006, the plaintiff filed a motion to compel the clerk to allow access to certain docket files and separately filed "an appeal" with the Connecticut Freedom of Information Commission seeking access to the clerk's docket file. (*Id.* at ¶¶ 58–59.) The plaintiff eventually received the documents that had been withheld from the clerk's file. (*Id.* at ¶ 64.) Judge Foley and Judge Riley waited over one and a half years to issue written opinions for the appellate record. (*Id.* at ¶¶ 65, 67.) The plaintiff sought clarification of an ambiguity in Judge Riley's opinion, which Judge Riley denied more than a year after the request was made and not until the Appellate Court ordered Judge Riley to do so. (*Id.* at ¶ 68–71.)

At Judge Foley's reconfirmation hearing, he stated that the plaintiff had threatened court staff. (*Id.* at ¶ 74.) The plaintiff then filed a motion to disqualify Judge Foley and Judge Riley on August 20, 2009. (*Id.* at ¶ 75.) That motion is still pending. (*See id.* at ¶ 88–89.)

**H.     The Plaintiff Loses His Appeal**

The plaintiff did not file a brief in his appeal until September 23, 2009. (*Id.* at ¶ 78.) On October 6, 2009, the Connecticut Appellate Court allegedly improperly dismissed his appeal. (*Id.* at ¶ 80.) The Connecticut Supreme Court denied the plaintiff's petition for certification to appeal. (*Id.* at ¶ 84.) The plaintiff accused some of the Justices of being unethical. (*Id.* at ¶ 85.)

**I.     The Plaintiff Continues to Litigate**

On January 8, 2015, the plaintiff filed a motion to vacate the sentence imposed by Judge Riley. (*Id.* at ¶ 87.) The sentence was vacated and the plaintiff was resentenced. (*Id.* at ¶¶ 90–91.) Then, the plaintiff appealed his conviction and the suspension of his law license. (*Id.* at ¶ 92.) The clerk of the trial court "closed out" the case. (*Id.* at ¶ 93.) On May 11, 2015, the Commissioner of Motor Vehicles suspended the plaintiff's driver's license for failing to respond to an infraction complaint. (*Id.* at ¶ 94.) The plaintiff filed motions to disqualify the Chief Appellate Clerk and the Chief Judge of the Appellate Court, which were denied. (*Id.* at ¶¶ 95–96.) The Appellate Court dismissed the plaintiff's motion to vacate Judge Foley's order suspending his law license. (*Id.* at ¶ 97.) The Appellate Court dismissed the appeal and denied the plaintiff's motion for reconsideration and for a hearing. (*Id.* at ¶¶ 98–100.) The Connecticut Supreme Court denied his petition for certification on October 13, 2015. (*Id.* at ¶ 101.) Information about the circumstances of Mr. Williams's continued suspension is publicly available. (*Id.* at ¶ 105–11.) The plaintiff alleges that, on December 18, 2015, the Connecticut State Police arrested Ms. Mancini-Pickett on felony

forgery charges. (*Id.* at ¶ 102.) Presumably as a result of her arrest, Ms. Mancini-Pickett is on paid leave. (*Id.* at ¶ 104.)

## IV.     Procedural History

On March 16, 2016, the defendants filed a motion to dismiss. (ECF No. 21.) On March 17, 2016, the Court directed the plaintiff to either file a response to the motion or file an amended complaint pleading as many facts as possible, consistent with Rule 11, to address the alleged defects discussed in the defendants' memorandum of law in support of the motion to dismiss by April 6, 2016. (ECF No. 24.) The Court said that it would not allow further amendments after April 6, 2016. (*Id.*) This deadline was ultimately extended, and the plaintiff filed the Amended Complaint on May 6, 2016. The defendants renewed their Motion to Dismiss on June 30, 2016. (ECF No. 50.)

## V.     Discussion

The defendants contend that this suit must be dismissed because of the Eleventh Amendment, absolute judicial immunity, quasi-judicial immunity, the *Rooker-Feldman* doctrine, 42 U.S.C. § 1983's bar to injunctive relief against judges, the statute of limitations, immunity under Conn. Gen. Stat. § 4-165, the doctrine of res judicata, and for insufficient service of process. (ECF No. 50 at 3.) Mr. Williams has not filed a brief contesting any of these grounds. He has instead moved for leave to file a second amended complaint, this time to add allegations that he or an agent attempted to serve process in this case on Judge Foley, that the police treated the pleadings as a suspicious package, and that the police informed Mr. Williams that he will be arrested if he enters Judge Foley's property. (ECF No. 52 at 1–2.)

## A.       The Eleventh Amendment

To the extent that the plaintiff has sued the defendants in their official capacities for damages, the Court dismisses those claims because they are barred by the Eleventh Amendment to the United States Constitution. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

## B.       Personal Jurisdiction and Service of Process

The defendants argue that the plaintiff's claims against Judge Riley and Ms. Mancini-Pickett should be dismissed for lack of personal jurisdiction because the plaintiff allegedly has not properly served those defendants in their individual capacities. (ECF No. 50 at 24–25.) "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)). An individual may be served by following state law for serving a summons, by "delivering a copy of the summons and of the complaint to the individual personally," by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

### 1.       Conn. Gen. Stat. § 52-64

In Connecticut, the "service of a writ of summons shall be made by the officer reading it and the complaint accompanying it in the hearing of the defendant or by leaving an attested copy thereof with him or at his usual place of abode." Conn. Gen. Stat. §§ 52-54, 52-57. For lawsuits against the state and state employees, however, the General Assembly has enacted a distinct statute:

> Service of civil process in any civil action or proceeding maintainable against or in any appeal authorized from the actions of, or service of any foreign attachment or garnishment authorized against, the state or against any institution, board,

9

> commission, department or administrative tribunal thereof, or against any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as the case may be, may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford.

Conn. Gen. Stat. § 52-64(a). The Second Circuit has construed a previous version of that statute. That version contained a limitation that "[s]ervice of civil process in any civil action or proceeding maintainable against . . . *any officer*, servant, agent *or employee* of the state . . . *as such*, may be made by leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General or at his office in Hartford." *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507 (2d Cir. 2006) (quoting Conn. Gen. Stat. § 52-64 (2005)). The Second Circuit noted that the prior version "on its face does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity." *Id.* The court explained that "[w]ith respect to an individual who is an officer or employee of the State but is not sued *as such*, Connecticut law requires that service be made" either in person or at the person's abode. *Id.* (emphasis added).

Notably, the limitation of service under Conn. Gen. Stat. § 52-64 to state employees "as such" is absent from the version of the statute that is currently in force. In 2012, the General Assembly replaced "as such" with the words "as the case may be," which—rather than qualifying the scope of service under the statute—simply refer to the preceding list of potential defendants named in the statute.  2012 Conn. Acts 853 (Reg. Sess.). In addition, the amendment added a separate subsection for lawsuits brought by prisoners that allowed prisoners to serve all defendants "who are sued in their official capacity" by providing a single copy of process to the Attorney General. Conn. Gen. Stat. § 52-64(b). No such limiting language about the capacities in which

10

state employees are sued was added to the other subsection addressing suits by non-prisoners, which is the provision at issue in this case. *See* Conn. Gen. Stat. § 52-64(a). That legislative choice suggests that the General Assembly did not intend to limit subsection (a) to official capacity suits. *See Scholastic Book Clubs, Inc. v. Comm. of Revenue Servs.*, 304 Conn. 204, 219 (2012) ("[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly; or to use broader or limiting terms when it chooses to do so.") (citations and footnote omitted); *see also State v. Fernando A.*, 294 Conn. 1, 19 (2009) (noting that "the legislature is presumed to know the judicial interpretation placed upon a statute; and that the legislature is presumed to be cognizant of judicial decisions relevant to the subject matter of a statute and to know the state of existing relevant law when it enacts a statute.") (quotation marks and citations omitted).

Thus, the current text of Conn. Gen. Stat. § 52-64(a) indicates that when a plaintiff sues a state employee in his or her individual and official capacities, the plaintiff may serve the defendant by "(1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Hartford." Conn. Gen. Stat. § 52-64.[1] A Connecticut Superior Court decision has adopted this view, concluding that a

---

[1] Although the Court could find nothing in the legislative history specifically addressing the elimination of the "as such" language that formed the linchpin of *Bogle-Assegai*, or suggesting that that change was meant to expand subsection (a) to individual capacity suits, the legislative history is immaterial. Under Connecticut law, courts interpreting Connecticut statutes may not consider legislative history unless the language of the statute is ambiguous, which it is not in this case. Conn. Gen. Stat. § 1-2z. For the same reason, the titling of the statute "Service in action against state" does not alter the meaning dictated by the statute's plain language. *See State v. Ryan*, 48 Conn. App. 148, 157 (1998) ("*When the language used within a statute is doubtful*, the true

prisoner who sued state employees in their official and individual capacities could serve the defendants in their individual capacities under Conn. Gen. Stat. § 52-64(a). *Ramos v. State Dept. of Correction*, No. DBD135009197, 2014 WL 5472171, at *6 (Conn. Super. Ct. Sept. 30, 2014). *But see, e.g.*, *Hubert v. State of Connecticut Dep't of Correction*, No. 14-CV-00476 (VAB), 2016 WL 706166, at *6 (D. Conn. Feb. 22, 2016) (without addressing effect of 2012 amendment, stating that Conn. Gen. Stat. § 52-64 does not provide for service of state employees in their individual capacity); *accord Davis v. Mara*, 587 F. Supp. 2d 422, 425–26 (D. Conn. 2008) (construing prior version of Conn. Gen. Stat. § 52-64 in light of *Bogle-Assegai*.).

2.   *Connecticut Appellate Court Decisions Hold That Conn. Gen. Stat. § 52-64(a) Does Not Govern Service of Individual Capacity Suits on State Officials*

In *Harnage v. Lightner*, 163 Conn. App. 337 (2016), the Connecticut Appellate Court held that "§ 52-64(a) applies only if a state employee has been sued in his official capacity and that § 52-57(a) applies when a state employee is sued in his individual capacity." Section 52-57(a) requires in-hand or abode service. The court also held that "a plaintiff, who serves a state defendant pursuant to § 52–64(a) by leaving a copy of the process with the attorney general at the Office of the Attorney General, has properly served the defendant only in his or her official capacity and has failed to properly serve the defendant in his or her individual capacity." *Id.* at 342–45.

The *Harnage* court relied on, among other cases, *Bogle-Assegai* and *Traylor v. Gerratana*, 148 Conn. App. 605, 612–13 (2014). However, as discussed above, *Bogle-Assegai* construed a version of the statute that the General Assembly chose to amend in 2012. The analytical cornerstone of *Bogle-Assegai*, *i.e.*, the limiting language "as such," is absent from the current

---

meaning may be ascertained by considering it in the light of all of its provisions as well as its title.") (emphasis added) (internal quotation marks and citations omitted).

version of the statute. The court in *Harnage* did not note that the statute had changed or that *Bogle-Assegai* construed a version of the statute that is no longer in force.

The second case relied on by the *Harnage* court was a Connecticut Appellate Court decision, *Traylor*, which contains no analysis or acknowledgment of the revised statutory language. The *Traylor* court concluded in a single sentence that "[t]he plaintiff . . . failed to serve process on the legislative defendants in their individual capacities at their usual place of abode, as required under General Statutes § 52-57(a)." *Traylor*, 148 Conn. App. at 612–13. The court in *Traylor* cited *Edelman v. Page*, 123 Conn. App. 233, 243–44 (2010) in relation to its conclusion. But *Edelman* was decided two years before the Connecticut General Assembly revised Conn. Gen. Stat. § 52-64(a) to remove the limiting language "as such."

Although decisions of intermediate state courts are not "strictly" binding, a federal court may not disregard those decisions "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 126 (2d Cir.2010) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir.2005)); *see also e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013); *Stevens v. Webb*, No. 12-cv-2909 (KAM), 2014 WL 115426, at *10 (E.D.N.Y. Mar. 21, 2014) (district court is not bound by intermediate court if "it is convinced" that highest court would rule otherwise).

There are three reasons why this Court is not "convinced" that the Connecticut Supreme Court would decide the issue differently than the *Harnage* court, despite the preceding analysis. *Golden Feather Smoke Shop, Inc.*, 597 F.3d at 126. First, the Connecticut Supreme Court denied the plaintiff's petition for certification for appeal from *Traylor*, foregoing an opportunity to construe differently Conn. Gen. Stat. § 52-64. *Traylor v. Gerrantana*, 312 Conn. 902 (2014).

13

Second, the Connecticut Supreme Court recently cited *Harnage* approvingly, albeit for a different proposition. *Costello v. Golstein & Peck, P.C.*, 321 Conn. 244, 252 n.8 (2016). Third, counting *Harnage*, there are now at least four Connecticut Appellate Court cases that have concluded that Conn. Gen. Stat. § 52-64(a) does not govern service on state employees in individual capacity suits—three of which were cited in *Harnage* in the same paragraph in which the court noted that "[i]n construing §§ 52–57(a) and 52–64(a), we do not write on a clean slate." *Harnage*, 163 Conn. App. at 344. Although only two decisions—*Harnage* and *Traylor*—postdated the 2012 amendment, the fact remains that the Connecticut Appellate Court's understanding that the statute does not govern individual capacity suits is well settled and, at least in this context, unaffected by the amendment. Accordingly, while it is possible that the Connecticut Supreme Court will overrule these cases, this Court is not "convinced" that it would do so. *Golden Feather Smoke Shop, Inc.*, 597 F.3d at 126.

The plaintiff has filed a document entitled "Proof of Service," in which a person declares that she mailed a copy of the summons and complaint to the Attorney General in Hartford, Connecticut, although the document does not indicate whether the copy was mailed to the Attorney General to serve Judge Riley or to serve Ms. Mancini-Pickett.[2] (ECF NO. 55.) Under *Harnage*, this is insufficient to serve the defendants in their individual capacities. Accordingly, the Court does not have personal jurisdiction over Ms. Mancini-Pickett or Judge Riley in their individual capacities because they have not been served with process. The defendants do not challenge the

---

[2] On January 4, 2016, the plaintiff filed a declaration by an individual stating that she had left copies of the summons and complaint for Judge Foley with Judge Foley's wife at their residence. She also left copies for Judge Riley at the Connecticut Superior Court in Willimantic and sent copies by mail to his home. (ECF No. 10.) This attempt to serve Judge Riley was deficient because it did not comply with Federal Rule of Civil Procedure 4.

Court's jurisdiction over Judge Foley and, as discussed below, even if the Court did have personal jurisdiction over Judge Riley or Ms. Mancini-Pickett, the Court would dismiss the plaintiff's claims against all defendants.

### C.    The Claims Against Judge Foley and Judge Riley Are Barred By Absolute Judicial Immunity[3]

Judges are generally immune from suit for their judicial actions. *Bradley v. Fisher*, 80 U.S. 335, 344, 351, 357–58 (1871) (holding that a suspended attorney could not sue the judge who suspended the attorney's license to practice law because of judicial immunity). "This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice." *Randall v. Brigham*, 74 U.S. 523, 536 (1868). "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley*, 80 U.S. at 347. Judicial actions include acts such as "issuing a search warrant, directing court officers to bring a particular attorney before the judge for a judicial proceeding, granting a petition for sterilization, and disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) (citations omitted). In contrast, there is no immunity for non-judicial acts such as demoting or dismissing a court employee or "compiling general jury lists to affect all future trials."*Id.*

---

[3] Although the statute of limitations and judicial and quasi-judicial immunity are affirmative defenses, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Here, the factual allegations of the complaint show that judicial immunity applies and that the claims are time-barred.

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). "Judicial immunity is not defeated 'even when the judge is accused of acting maliciously and corruptly.'" *Id.* (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). "In this context, a court acts in the absence of all jurisdiction when it does not have any 'statutory or constitutional *power* to adjudicate the case.'" *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). "[A] judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge *must have known* that he or she was acting in the clear absence of jurisdiction." *Id.* at 85. (quoting *Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988)). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, [courts] look to the particular act's relation to a general function normally performed by a judge . . . ." *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (internal citation omitted).

The plaintiff's claims are barred because he has not alleged facts suggesting that Judge Foley or Judge Riley "acted in the clear absence of jurisdiction" or that either judge "*must have known*" that his actions were clearly without jurisdiction. *Gross*, 585 F.3d at 84. The plaintiff contends that Judge Foley suspended his law license, issued orders to show cause, denied motions and refused to rule on others, testified at a reconfirmation hearing, scheduled a hearing at the same time as a different hearing, did not provide written copies of decisions, stated that the plaintiff threatened court staff, and glared at and insulted the plaintiff while in the courtroom. The plaintiff alleges that Judge Riley scheduled an evidentiary hearing, denied a motion to dismiss, convicted the plaintiff of speeding, denied the plaintiff an allocution and imposed an illegal sentence, did not

16

issue a written decision, and did not articulate a decision. The plaintiff has not plausibly alleged that these actions were "actions not taken in [a] judge's judicial capacity" or were "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. Admittedly, a judge who insults the parties does not exhibit the judicial temperament that litigants deserve to encounter in the federal and state courts. However, a judge does not lose his or her immunity for judicial actions simply because the judge was rude. Accordingly, the Court dismisses the claims against Judge Foley and Judge Riley because those defendants are entitled to judicial immunity.

### D.     Deputy Chief Clerk Mancini-Pickett Is Entitled to Quasi-Judicial Immunity

The plaintiff alleges that Ms. Mancini-Pickett "closed out" the plaintiff's case, discussed with Judge Foley his intervention in the plaintiff's criminal matter, telephoned Judge Foley about a pending motion, did not give the plaintiff a public record, threatened to have the plaintiff removed from the clerk's office, and did not respond properly to the plaintiff's inquiries. (Compl. at ¶¶ 16, 32, 35–36, 57–60.)

Like a judge, "[a] court clerk may not be entitled to absolute immunity in all cases." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). "A private actor may be afforded the absolute immunity ordinarily accorded judges performing their authorized judicial functions if the private actor's role is functionally comparable to the role of those judges, or his acts are integrally related to an ongoing judicial process." *Blivens*, 579 F.3d at 210 (internal citations and quotations omitted). "'[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Id.*

Here, Ms. Mancini-Pickett is entitled to quasi-judicial immunity. All of the allegations against Ms. Mancini-Pickett arise out of and are related to the plaintiff's individual cases before the Connecticut Superior Court. Her actions were "functionally comparable to the role of those

judges, or [her] acts [were] integrally related to an ongoing judicial process." *Bivens*, 579 F.3d at 210 (internal quotations and citations omitted). Indeed, the plaintiff alleges that Ms. Mancini-Pickett "answers to" Judge Foley, who was "directly responsible for the proper function[ing] of the Danielson Clerk's Office . . . ." (Compl. ¶ 39.) While the allegation that Ms. Mancini-Pickett threatened to have the plaintiff physically removed from the clerk's office could be considered to be a non-judicial administrative action, and thus not entitled to immunity, the statement was allegedly made in the context of the plaintiff's repeated questioning of the clerk about documents from the plaintiff's specific case, and is part of the plaintiff's claim that Ms. Mancini-Pickett denied him access to documents needed for his case. (*See id.* at ¶ 57.)

Accordingly, Ms. Mancini-Pickett's efforts to maintain a functioning clerk's office by informing the litigant that he could be removed from the premises and thereby denied access to case-related documents because of his disruptive or "contumacious" behavior was, under the facts and circumstances of this case, an act that was "integrally related to an ongoing judicial process," and therefore entitled to immunity. *Bivens*, 579 F.3d at 210. Just as a judge would be entitled to immunity for warning a disruptive party that he or she could be removed from the courtroom, Ms. Mancini-Pickett has immunity for warning a party seeking documents *from his case* that he could be removed from the clerk's office for his disruptive behavior. *See id.* ("In employing this functional analysis, the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."); *see also Argentieri v. Clerk of Court*, 420 F. Supp. 2d 162, 164–65 (W.D.N.Y. 2006) (clerks of court sued for failing to address, or otherwise respond to, inquiries about documents filed in court had absolute immunity).

### E.      Statute of Limitations

The defendants argue that the statute of limitations bars the plaintiff's claims. In Connecticut, the statute of limitations for claims brought under 42 U.S.C. § 1983 is three years. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994); Conn. Gen. Stat. § 52-577. "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief . . . [T]he tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted). The plaintiff does not respond to the defendants' arguments and does not raise any equitable tolling claims.

Here, the defendants' allegedly wrongful acts would have resulted in damages when the suspension of the plaintiff's law license took effect—and thus at the latest by August 7, 2005. (ECF No. 36 at ¶ 47.) The plaintiff filed this suit about a decade after "the wrongful act . . . result[ed] in damages." *Smith*, 782 F.3d at 100. In any event, the Complaint alleges no acts or omissions by any defendants, other than Ms. Mancini-Pickett's arrest on forgery charges, which is not alleged to have affected the plaintiff in any way, that occurred within the three-year limitations period prior to the filing of this lawsuit on September 4, 2015. The plaintiff's claims are, therefore, barred by the statute of limitations.

## VI.    Motion to Amend

Rather than oppose the defendants' motion to dismiss, the plaintiff filed a second "Motion for Leave to Amend Complaint" on July 21, 2016. (ECF No. 52.) The defendants oppose the plaintiff's motion. (ECF No. 53.) The Court denies the Motion for Leave to Amend Complaint

because the proposed amendment would be futile. Courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15. "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss . . . ." *Id.*

The plaintiff seeks to amend the complaint to include allegations about his attempts to serve Judge Foley and the Connecticut State Police's informing the plaintiff that he will be arrested if he trespasses on Judge Foley's property. (*See* ECF No. 52 at 1–2.) It is apparent from the proposed amendment that it is futile because the judge's actions described in the police report attached to the proposed amendment are not actionable. The report recounts that somebody—it does not say who—reported that a suspicious package (which turned out to contain process in this lawsuit) had been delivered to Judge Foley's residence, and that the police spoke with Judge Foley who explained his history with the plaintiff and said that he "does worry what [the plaintiff] might do next and worries about his family." (ECF No. 52-2 at 2.) The plaintiff also seeks to add the allegation that the police informed the plaintiff "that if he enters Judge Foley's property that he will be arrested" but does not explain how this allegation is material to his case or would ground a cause of action against Judge Foley. (ECF No. 52 at 2.) Further, the plaintiff does not allege that Judge Foley acted under color of law when a process server came to his house and he responded to inquiries by the police, even though state action is required for all of the plaintiff's federal claims under 42 U.S.C. § 1983. For all these reasons, the amendment would be futile.[4]

---

[4] And there is no allegation in the proposed amendment that suggests that Judge Foley violated Connecticut Practice Book § 2-32, even assuming that that provision is enforceable in a private action.

**VII.   Motions to Disqualify the Attorney General**

The plaintiff has filed a "Motion to Disqualify Attorney General George Jepsen" (ECF No. 18), and a "Motion to Preclude Attorney General George Jepsen From Representing Ms. Mancini Pickett" (ECF No. 44).   The Court may "disqualify counsel where necessary to preserve the integrity of the adversary process in actions before [the court]." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). For the reasons discussed below, the Court denies both motions.

The plaintiff advances the following arguments as to why the Attorney General should be disqualified from representing the defendants. First, he argues that the Attorney General is bound by issue preclusion. (ECF No. 18 at 3.) Second, he argues that the Attorney General lacks actual authority to act on behalf of the defendants. (*Id.* at 4.) Third, the plaintiff argues that the Attorney General lacks legal authority to represent the defendants in their individual and official capacities. (*Id.* at 6, 9.) Fourth, the plaintiff suggests that Rule 3.8(1) of the Connecticut Rules of Professional Conduct prevents the Attorney General from appearing in this case. (*Id.* at 12.) Finally, The plaintiff suggests that there the Attorney General faces a conflict of interest in representing Ms. Mancini-Pickett and two state judges because "Ms. Mancini-Pickett is "currently under prosecution before the branch of government in which her fellow defendants are judges and which department is also directing defense counsel in this case . . . ." (ECF No. 44. at 3.) Even assuming that the plaintiff has standing to raise these arguments, they are without merit.

Issue preclusion does not bar the Attorney General from representing the defendants. The plaintiff suggests that in an earlier case, he moved to disqualify the Attorney General and, thereafter, the Attorney General "withdrew that appearance under threat of disqualification." (ECF No. 18 at 4.) The plaintiff is apparently referring to a case in state court in which the "[Connecticut] Appellate Court then relied upon [the Attorney General's] withdrawal when it dismissed Plaintiff's

motion to disqualify on the basis that the Attorney General had withdrawn from the case." (*Id.*)

The recitation of this procedural history makes clear that issue preclusion is inapplicable. Under

Connecticut law, which this Court follows to determine the preclusive effect of Connecticut

judgments, an issue is precluded if "1) it was fully and fairly litigated in the first action; 2) it was

actually decided; and 3) the decision was necessary to the judgment." *Omotosho v. Freeman

Investment & Loan*, 136 F. Supp. 3d 235, 248–49 (D. Conn. 2016) (citations omitted). According

to the plaintiff, the Attorney General withdrew his appearance before the motion was decided.

Thus, the issue of whether the Attorney General is disqualified in the plaintiff's disciplinary case

was not actually decided.

The plaintiff's claim that the Attorney General lacks "actual" authority to represent the

defendants is meritless. He points to a motion for extension of time, in which defense counsel asks

for more time to "confer with the defendant Superior Court Judges." (ECF No. 18 at 6 (citing ECF

No. 14 at 2).) It does not follow from the fact that defense counsel needed more time to confer

with her clients that she did not then—and does not now—have authority to represent them.

Also without merit are the plaintiff's arguments that the Attorney General lacks legal

authority to represent the defendants. The Attorney General may "provide for the defense" of "any

such state officer, employee or member in any civil action or proceeding in any state or federal

court arising out of any alleged act, omission or deprivation which occurred or is alleged to have

occurred while the officer, employee or member was acting in the discharge of his duties or in the

scope of his employment." Conn. Gen. Stat. § 5-141d.

With some exceptions, the Connecticut Rules of Professional Conduct express "the

standards of professional conduct expected of lawyers practicing in the District of Connecticut."

D. Conn. L. Civ. R. 83.2(a). The plaintiff suggests that Rule 3.8 of the Connecticut Rules of

Professional Conduct disqualifies the Attorney General in this case. That rule provides that "[t]he prosecutor in a criminal case shall . . . [r]efrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ." Conn. R. Prof'l Conduct R. 3.8(1). The plaintiff's argument fails because this is not "a criminal case" and the Attorney General is not a "prosecutor" in this case. *Id.*

Finally, the plaintiff has not shown that a conflict of interest prevents the Attorney General from defending this case. "In cases of concurrent representation,  . . . it is prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." *Hempstead Video Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005) (citations and quotations omitted). A lawyer may not represent a client if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Conn. R. Prof'l Conduct R 1.7(a). There is no indication that Judge Foley, Judge Riley, or the Attorney General are related in any way to the criminal prosecution of Ms. Mancini-Pickett, or that the Attorney General's representation of the three defendants would otherwise create a conflict of interest.

For the reasons discussed above, the Court denies the Motion to Disqualify Attorney General George Jepsen" (ECF No. 18), and the "Motion to Preclude Attorney General George Jepsen From Representing Ms. Mancini Pickett" (ECF No. 44).

## VIII.  Miscellaneous Motions

The Court denies as moot the "*Ex Parte* Motion to the Chief Judge for Case Assignment," in which the plaintiff requests that this case not be assigned to Judge Robert Chatigny. (ECF No.

4.) The Court likewise denies as moot the "Motion to Compel the Clerk to Determine Plaintiff's Application for ECF Registration" (ECF No. 17).

## IX.    Conclusion

For the reasons discussed herein, the Court DISMISSES the Amended Complaint (ECF No. 36). The Court DENIES as moot the "*Ex Parte* Motion to the Chief Judge for Case Assignment" (ECF No. 4), and the "Motion to Compel the Clerk to Determine Plaintiff's Application for ECF Registration" (ECF No. 17). The Court DENIES the "Motion to Disqualify Attorney General George Jepsen" (ECF No. 18), the "Motion to Preclude Attorney General George Jepsen From Representing Ms. Mancini Pickett" (ECF No. 44), and the "Motion for Leave to Amend Complaint" (ECF No. 52). The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
             August 25, 2016